[Crim. No. 3412. First Dist., Div. One. Dec. 16, 1958.]

THE PEOPLE, Respondent, v. FRED KEFRY, Appellant.

Gregory S. Stout for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Walter H. Giubbini, Deputy District Attorney for Respondent.

BRAY, J.—Defendant Kefry, Robert Graham and Richard Hacker were convicted by a jury of five counts of felony, three of burglary (second degree), one of receiving stolen property, and one of conspiracy. Defendant Kefry was sentenced to the

state prison, all terms to run concurrently. Defendant Kefry alone appeals from the judgment and the order denying new trial.

## QUESTIONS PRESENTED

1. Sufficiency of evidence (a) conspiracy; (b) burglaries; (c) possession of stolen goods.
2. Alleged inconsistencies in the convictions.
3. Alleged error in admission of evidence.
4. Alleged error in an instruction.
5. Alleged misconduct of the district attorney.

## EVIDENCE

The story commences about a week prior to October 4, 1956, when defendant, a regular customer of one Sharp who operated a Union service station, approached Sharp with an offer to sell him some spark plugs at 35 cents each. The prevailing price was 53 cents. Sharp declined. Defendant denied offering to sell spark plugs or quoting a price. He testified that what he told Sharp was "that a man walked in with some tools and spark plugs. He wanted to sell them and I also told him I would go down and see the man at the station where I trade." Defendant then stated that the man, who he claimed was a stranger to him, did not have the spark plugs when he came to defendant's saloon and talked to defendant. The man never came back to learn the result of defendant's visit to Sharp.

On October 4 Sharp's station was burglarized. Taken therefrom were boxes of spark plugs and an adding machine.* Either on the night of October 9 or the morning of October 10 a small wooden office building located on the lot of the Auto Leasing Company, managed by Ned Nelson, was broken into. (Count II of the indictment.) Taken were a typewriter and an adding machine. Also taken from the lot was a '53 Ford. About the same time a Mobil service station operated by Oma Jennings was burglarized. (Count I.) Taken were spark plugs, an adding machine and an impact wrench. On the morning of the Nelson burglary, John Herold, manager of a motel adjacent to the Union Oil station operated by Harry Hillary, observed Hacker force the door to the lubrication room of the station. (Count III.) Herold called the police and watched Hacker enter and proceed to the station's office where he attempted to pry open the safe. He then carried

---

*This burglary is not one of those charged in the indictment.

several meters, a buffer, an electric drill and an electrical timing device from the building to the motel's parking area where he placed them between two automobiles. Graham stayed in the automobile during this procedure. (The automobile was the one stolen from the Nelson lot.) The police on arrival found Graham crouched down in the front seat, on which were two severed locks from the Jennings station. The automobile trunk contained the impact wrench, spark plugs and adding machine stolen from that station. Graham told the police that he was a hitch-hiker picked up by the driver of the car, that he did not know the driver's name, and that the driver had just stopped the automobile there and said that he would be back in a minute. Hacker was apprehended a short distance from the gas station. He was perspiring and breathing heavily. There were chalk marks on the palms of his hand and on his pants. There was a white fence nearby. He denied complicity, said he was walking and lived down the street but could give no address. He also denied knowing Graham and anything about the automobile. Probation Officer Jenkins testified that in 1954 both Hacker and Graham told him they had been acquainted with each other ever since their junior high school days.

On the morning of the Hillary burglary Inspector Casciani and Officer Masio started to watch Hacker's home. About 11:15 a.m. defendant drove up and backed his car in the driveway. Also in the car were Hacker's wife and two children. On alighting defendant opened the car trunk. He entered Hacker's garage and carried out an item which he placed in the trunk. Again entering the garage he returned with another item which he also placed in the trunk. Defendant and Mrs. Hacker then went into the house. About five minutes later defendant emerged carrying a cardboard carton which he placed on the car's front seat. He then entered the car. At this point the officers identified themselves. Inspector Casciani looked into the box and saw that it contained spark plugs. He then looked at defendant. Defendant then said " 'I have no use for that kind of stuff. That stuff will ruin me.' " When asked what he had placed in the trunk he said that he was just doing a favor for a friend who had called him up that morning stating that he was in jail for old traffic tickets and asked defendant to bring the caller's wife down to see an attorney; that the wife stated they were going to move and asked defendant to take the stuff and " '. . . so I'm just going to hold it for a couple of days until I see what they want me

to do with it.' '' The box in the front of the car contained the spark plugs and adding machine stolen from the Sharp service station. In the trunk were the adding machine and typewriter stolen from the Nelson property.

That afternoon defendant told Inspector Casciani that he had known Hacker and Graham for two and five years respectively and that they were in his bar on the evening of October 9. (The Nelson burglary was either that night or the next morning.) He stated that on receiving a phone message from Hacker he brought Mrs. Hacker to the jail. After her visit with her husband she told defendant that Hacker was being held for old traffic tickets. Defendant then drove her home. Just before he was going to leave the house she asked him to take the property found in the car as a favor and to hold it until she and Hacker moved. Inspector Casciani then informed defendant they had observed him put some of the property into the car before defendant went into the house. Defendant then admitted that this was correct. On being asked as to the inconsistency in his statement defendant said ''I wouldn't be positive when she asked me to take the things or when we got them. I wouldn't be positive to that.'' Defendant denied knowing that the articles were stolen. At the trial defendant testified that Mrs. Hacker had asked both before arriving at the house and again in the house that he hold the property.

Defendant testified that he knew Hacker for five years as a customer of his bar and that Mrs. Hacker made sandwiches for sale to defendant's customers. He also knew Graham as a customer at his bar for about two years. Both Graham and Hacker were in the bar that night between 9:30 and 10.

Sharp testified that several days prior to the burglary at his station defendant and Hacker had been in together to gas defendant's car. Defendant admitted this visit, explaining that he had gassed his car prior to going to the race track with Hacker and others for a day of racing.

1. SUFFICIENCY OF EVIDENCE.

(a) *Conspiracy.*

In spite of defendant's contention to the contrary, there is ample evidence to prove that defendant conspired with the others to obtain and sell stolen property. ■ A conspiracy exists where it is established that there was an unlawful agreement to commit a crime between two or more persons, accompanied by an overt act in furtherance of such agreement.

(*People* v. *Buffum* (1953), 40 Cal.2d 709, 715 [256 P.2d 317];
*People* v. *Campbell*, 132 Cal.App.2d 262, 267 [281 P.2d 912].)
█ In proving the agreement it is not necessary to show
that the parties met and actually agreed to undertake an un-
lawful act or that they previously arranged a detailed plan.
█ Generally a conspiracy can only be established by cir-
cumstantial evidence because the essence of a conspiracy—the
unlawful design—can usually be proved only by the estab-
lishment of independent facts, bearing more or less closely
upon the common design. (*People* v. *Steccone* (1950), 36 Cal.
2d 234, 238 [223 P.2d 17].) Thus, a conspiracy may be
proved by indirect evidence and inferences justified by the
circumstances. (*People* v. *Bennett* (1955), 132 Cal.App.2d
569, 576 [282 P.2d 590]; *People* v. *Califro* (1953), 120 Cal.
App.2d 504, 512 [261 P.2d 332].) █ "If in their endeavors
to achieve the same end, the defendants pursued a common
purpose by their several, respective acts, each contributing
his part, the jury is warranted in concluding that all were
involved in a conspiracy to effect a common object." (*People*
v. *Fratianno* (1955), 132 Cal.App.2d 610, 624 [282 P.2d
1002].)
█ Here there is evidence beyond mere association, which
was admitted, to connect defendant with the crimes even be-
fore they were committed by Hacker and Graham. The con-
necting evidence is the offer to sell spark plugs to Sharp
below the market price. This would support a reasonable in-
ference either that defendant was looking for a place to dispose
of possible stolen items or that he was attempting to discover
whether Sharp had such objects on hand so that they might
be taken subsequently. The fact that the prosecution did not
establish the market value of used plugs would seem to be
immaterial in view of the fact that defendant's explanation
for the offer was that he was just acting as a middleman for
a stranger in his bar. Of course, that explanation need not be
believed by the trier of fact.
█ At the time of his arrest, defendant had in his posses-
sion stolen property from both Sharp and the Auto Leasing
Company. While this possession could have been innocent,
the evidence would support the contrary determination. Sub-
sequent to identification of themselves as police officers and
prior to any question asked by them, defendant stated that
such stuff would "ruin" him. This certainly would show a
consciousness of guilt and knowledge that the items were
stolen as he made such remark even before giving his explana-

tion for possession. It is reasonable to infer that he, if he did not know of their stolen character, would not have made such remark until told that they were stolen property. The only other inference, which does not have to be accepted, is that he suspected or guessed that they were stolen because he was stopped and Inspector Casciani glanced at them before saying anything, and, therefore, he attempted to explain how he obtained the property. Adding to the reasons for disbelieving that the possession was innocent is the statement made to Inspector Casciani to the effect that the first time he was asked to take the property by Mrs. Hacker was after he entered Hacker's house and was about to leave. He did not change his story until he was confronted with his conduct as observed by the officers.

Further, the only property which defendant took from the Hacker house was stolen property. Defendant takes issue with this, stating that there was also a saw and drill in the trunk of the car. Actually, it seems that there was only one object, something called a saw drill. But in this regard, at the trial, defendant testified that he did not know how it got there and that Hacker probably was the one who put it there. Yet defendant had previously told Inspector Casciani that he had taken it from the garage. His only explanation for the two statements was that he did not remember, that the first time he saw the object was when Inspector Casciani pointed to it while it was in his trunk.

Defendant's connection with the stolen property (assuming that defendant knew it was stolen at the time of loading, a reasonable inference under the circumstances), would further connect him with Graham and Hacker and the burglaries committed by them, beyond the connection established by his taking stolen property from the Hacker house, as the co-defendants were using the car stolen from Auto Leasing Company to burglarize the Hillary Union station. And in the stolen car was found property stolen from the Jennings station.

Moreover, in view of the foregoing, it would seem that it would be a reasonable inference that defendant was attempting to dispose of the remaining stolen property (the other part was recovered from the stolen Ford) so that the police would not find it upon searching Hacker's house. The police did not obtain Hacker's address until his wife obtained a permit to see him at the city jail on the morning of October 10.

Of course all the evidence from which the conspiracy could be deduced is circumstantial and defendant did attempt to explain all the evidence against him. ██ But as stated in *People* v. *Dragoo* (1953), 121 Cal.App.2d 322, 324 [263 P.2d 90], where the contention was that a witness was incredible because her testimony was biased, false and improbable, " 'A reviewing court will not hold unsupported the trial court's finding of guilt merely because it might reasonably draw different inferences from those the trial court reasonably drew, or might not be convinced beyond a reasonable doubt of the guilt of the defendant [citations]. It is the trier of the fact which must be persuaded beyond a reasonable doubt of the guilt of the defendant. [Citation.] . . . ██ Unless it clearly appears that upon no hypothesis whatever is there sufficient substantial evidence to support a finding of the trier of fact, it cannot be set aside on appeal. [Citation.] Our function is to determine whether the evidence, if believed, is of sufficient character to justify conviction.' "

(b) *Burglaries.*

There is no dispute over the fact that it clearly appears that Hacker and Graham committed the burglaries, including that of the Sharp station, which was not charged. It is also clear that there is no evidence showing defendant's presence at any of the burglaries in any capacity. Therefore, the convictions for burglary must be sustained either on the liability of a conspirator or on the evidence of possession of stolen property plus slight corroborating evidence.

It is clear that defendant was in possession of property stolen from particular premises for which his codefendants were convicted of burglary. ██ In *People* v. *Citrino* (1956), 46 Cal.2d 284, 288 [294 P.2d 32], it is said: "Possession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, conduct, or declarations of the accused tending to show his guilt. [Citations.] ██ When possession is shown, however, the corroborating evidence may be slight [citations], and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary." In that case there was corroborating evidence from a false explanation of possession to the buyer, use of a fictitious name in selling the property, selling the property for much less than its actual value, and because the jury, under the circumstances, could infer that his testimony as to receiving the

property as a gift from a certain person was false. ■ Thus, it is well settled that possession, coupled with false statements as to the manner in which the property came into a defendant's possession, may be sufficient to sustain a conviction for burglary. See *People* v. *Mercer* (1951), 103 Cal.App.2d 782, 789 [230 P.2d 4]. In the latter case the court said the jury was justified in rejecting the explanation as false from false and inconsistent statements, aside from those regarding possession, which showed a consciousness of guilt. ■ And a defendant who was in possession of stolen property has a duty to explain his possession in order to remove the effect of possession as a circumstance, taken with other suspicious facts, of guilt. (*People* v. *Golembiewski* (1938), 25 Cal.App.2d 115, 117 [76 P.2d 717] ; *People* v. *Abbott* (1894), 101 Cal. 645 [36 P. 129].)

*People* v. *Taylor* (1935), 4 Cal.App.2d 214 [40 P.2d 870], points out that the corroborating circumstances accompanying possession of stolen property need be but slight, provided it is convincing. ''. . . false statements showing consciousness of guilt . . . have each in turn been held to be sufficient to connect the accused with the crime when proven in connection with possession of the stolen property. . . . And when defendant makes an explanation as to the manner in which he came into possession of such stolen property, the question as to whether he is telling the truth in that regard rests solely with the jury.'' (Pp. 217-218.)

■ Under the above cases, there is corroborating evidence in addition to possession as the jury could reasonably infer that defendant gave a false explanation of his possession. Such an inference could be based on the false statement that Mrs. Hacker first asked him to take the property while he was in the house and about to leave. Additionally, defendant's statement to Inspector Casciani in front of the house, indicating that defendant knew the property to be stolen, is inconsistent with innocent possession. And there is also the explanation of his offer to sell spark plugs to Sharp. The jury could believe that the stranger was a fictitious person as well as the explanation being false. (See *People* v. *Citrino, supra,* 46 Cal.2d 284, 289.)

Cases cited by defendant in which it was held that the corroborating evidence was not sufficient are not in point. In *People* v. *Graziano* (1948), 83 Cal.App.2d 701 [189 P.2d 518], and in *People* v. *Draper* (1945), 69 Cal.App.2d 781 [160 P.2d 80], the respective defendant was not in possession of

stolen property at the time of arrest. In *People* v. *Tempomgko* (1933), 134 Cal.App. 209 [25 P.2d 245], the court stated: "It is not claimed that appellant told stories conflicting with each other, but only in conflict with those of other defendants. Such contradictions have never been held so indicative of guilty participation in burglary as to uphold a conviction where the only other substantial evidence was possession of the stolen property." (P. 211.)

In *People* v. *Roderiquez* (1911), 16 Cal.App. 358 [116 P. 986], the court stated that were it not for the conviction of the codefendant Morano it would be inclined to the opinion that the circumstances were such as to support a verdict of guilty against the defendant, but that in order to convict Morano it was necessary for the jury to believe testimony which cleared the defendant.

 After a conspiracy is established, and as we have before stated, it was established here, every act of each member in pursuance of the original plan is, in contemplation of law, the act of all of them. (*People* v. *Harper* (1945), 25 Cal.2d 862, 870 [156 P.2d 249] ; *People* v. *Weiss,* 50 Cal.2d 535 [327 P.2d 527].) The evidence is sufficient to support the implied finding that defendant entered into a conspiracy with Graham and Hacker to commit the burglaries with which he was charged. Moreover, the possession of stolen property plus the corroborating circumstances shown were sufficient to support the convictions.

(c) *Receiving Stolen Property.*

What we have said under (b) above applies likewise to this count. Moreover, defendant's admissions and contradictory statements coupled with his possession of the stolen property alone are sufficient to support a finding of guilt. (*People* v. *Smith* (1945), 26 Cal.2d 854, 858 [161 P.2d 941] ; *People* v. *Lyons* (1958), 50 Cal.2d 245, 258 [324 P.2d 556] ; *People* v. *Kittrelle,* 102 Cal.App.2d 149, 154 [227 P.2d 38].)

*People* v. *Taylor,* 4 Cal.App.2d 214, 219 [40 P.2d 870], held that under the circumstances of that case, the defendants could not be found guilty of separate counts of burglary and receiving stolen property because they personally took and asported the property taken during the burglarious entry, therefore the element of *receiving* was absent. The court also said (p. 219) : "However, a principal or accessory who does not personally participate in the caption and asportation with the actual thief may be adjudged guilty of both the burglary

and receiving the stolen property which the latter has taken.'' (See also *People* v. *Raven,* 44 Cal.2d 523, 526-527 [282 P.2d 866].)

2. CONVICTIONS.

Under the authorities there is no merit in defendant's contention that convictions on charges of conspiracy, receiving stolen property and burglary are mutually inconsistent. ██ ''In this state a prosecution may be had for either a conspiracy or the crime committed in pursuance thereof, and a conviction thereon may be had for both the conspiracy to commit a crime and the consummated crime committed in pursuance of its purpose.'' (*People* v. *McManis,* 122 Cal.App.2d 891, 899 [266 P.2d 134]; see also *People* v. *Lyon,* 135 Cal. App.2d 558, 586 [288 P.2d 57], where the defendants were convicted of both conspiracy to ask or receive bribes on behalf of a public officer and of grand theft of the bribe.) In *People* v. *Hoyt* (1942), 20 Cal.2d 306 [125 P.2d 29], convictions of conspiracy to commit robbery and of robbery were upheld. ██ In *People* v. *Keene* (1954), 128 Cal.App.2d 520, 529 [275 P.2d 804], the conviction of the defendants on a charge of conspiracy to pass forged checks with 13 checks alleged as the overt acts and of passing forged checks with intent to defraud as to each of those checks was upheld, the court saying, ''Conspiracy is a distinct offense from the actual commission of the offense or offenses forming the object of the conspiracy . . .'' (P. 529.)

3. ADMISSION OF TESTIMONY.

██ Defendant contends that the admission of Sharp's testimony to the effect that defendant offered to sell him spark plugs was error. There is no merit to this contention. The evidence was admissible as it tended to prove defendant was endeavoring to find an outlet for the property to be stolen and also ''casing'' the establishment to determine what stock was on hand. Further, as sale of property at a disproportionate rate is a suspicious circumstance, the offer to sell prior to the crime shows knowledge that a crime will be perpetrated as well as that defendant will be involved. ██ Moreover, defendant made no objection to the admission of this testimony. He is foreclosed from doing so now. (*People* v. *McMonigle* (1947), 29 Cal.2d 730, 743 [177 P.2d 745]; *People* v. *Millum* (1954), 42 Cal.2d 524, 526 [267 P.2d 1039]; *People* v. *Wheeler* (1952), 109 Cal.App.2d 714, 716 [241 P.2d 276].)

██ Defendant contends that the prosecution's only purpose in introducing the testimony of Probation Officer Jenkins that Graham and Hacker admitted knowing each other was to demean defendant by such association. It would not seem that the testimony was presented for that purpose, as the circumstances of the conversation were not given, though the witness had given his occupation as probation officer. It was admissible under the rule that evidence is admissible to show association of the alleged conspirators. (*People* v. *Brown* (1955), 131 Cal.App.2d 643, 661 [281 P.2d 319].) Both Graham and Hacker at the time of their arrests denied knowing each other. The admissibility of these statements depends upon whether the object of the conspiracy (substantive crime) had been accomplished. See *People* v. *Doble* (1928), 203 Cal. 510 [265 P. 184], holding that acts or declarations of a conspirator after the termination of the conspiracy are not admissible. Here the conspiracy had not terminated. Some of the loot was still to be disposed of. (See *People* v. *Sorrentino,* 146 Cal.App.2d 149, 161 [303 P.2d 859].) If there was any error in admitting this testimony it was not prejudicial as Graham testified that he had known Hacker for 15 years.

4. INSTRUCTIONS.

██ Defendant's contention that there was no evidence of conspiracy and hence no instructions on that subject should have been given, is answered by our determination hereinbefore set forth that there was ample evidence of conspiracy.

██ The court gave CALJIC Number 932. In *People* v. *Weiss, supra,* 50 Cal.2d 535, 563 [327 P.2d 527], decided after this case was tried, it was held that such instruction was erroneous in informing the jury that a conspirator could be held liable for crimes committed by his coconspirators before he joined the conspiracy but that the error was not prejudicial as there was no evidence of a substantive offense committed prior to the time that the defendant became connected with the conspiracy. The same is true here. None of the acts of his coconspirators occurred before the time when defendant spoke to Sharp about the spark plugs, from which act the jury could reasonably have determined that defendant had already entered the conspiracy.

5. ALLEGED MISCONDUCT OF DISTRICT ATTORNEY.

Defendant argued to the jury that the prosecution had suppressed evidence in two ways, (1) that the prosecution had not produced Mrs. Hacker as a witness because she would have

exonerated defendant, and (2) that the prosecution had not produced Officer Masio who with Inspector Casciani was an arresting officer and of whom defendant would have liked to ask a particular question. Defendant then stated that it was the prosecution's duty not to hide facts and it should have produced these two witnesses. In answer thereto the district attorney stated that if defendant wanted to examine Officer Masio he could have subpoenaed him. Clearly this was a statement the district attorney was entitled to make in view of defendant's argument. The district attorney then stated that he could not call Mrs. Hacker as her testimony was privileged. Again here there was no misconduct in view of defendant's argument. The district attorney then said that he would like to have had her on the stand, and finally, ''Mr. Hacker, a long-time friend of Mr. Kefry, but Mrs. Hacker doesn't come in, at all.'' In *People* v. *Wilkes,* 44 Cal.2d 679 [284 P.2d 481], it was held error for the prosecution to comment on the failure of the defendant's wife to testify. It was held that the trial court when objection was made, aggravated the situation even to the extent of telling the jury, in effect, that it should distrust the defendant's testimony because of his failure to call his wife.

In our case, while the district attorney probably went further than he should in commenting upon his inability to call Mrs. Hacker, we see no prejudicial error, particularly in view of defense counsel's insinuation that the failure to call her was a suppression of evidence. See *People* v. *Amaya,* 40 Cal. 2d 70, 79 [251 P.2d 324], to the effect that the prosecutor has the right to fairly comment to correct a false impression created by the remarks of the defendant's counsel.

The judgment and order are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 11, 1959. Schauer, J., was of the opinion that the petition should be granted.