[Crim. No. 7321. Second Dist., Div. One. Dec. 22, 1960.]

THE PEOPLE, Respondent, v. HENRY ALLEN BROWN, Appellant.

Ettinger & Deutsch and Warren L. Ettinger for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman Sokolow, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was convicted by the trial court of second degree burglary. He appeals from the judgment and order denying his motion for a new trial. Appellant does not dispute that a burglary was in fact committed; he contends only that the evidence is insufficient to connect him with the crime.

After parking his 1956 Buick in his garage around 10 p.m., Sunday, January 17th, John R. Johnson closed the overhead garage door but did not lock it. The next afternoon, January 18th, he observed the garage door up, and when he opened his car door there was no light; the car radio was missing, the hood was up slightly, the wires were cut and the battery was tilted to one side.

The following day, around 1 p.m. Officer Jackson saw defendant standing at the rear of an automobile; the trunk of the car was open and inside were three automobile radios. The officer asked him to whom the radios belonged; defendant said they were his, that he had bought them at a wrecking junk yard around 160th and Main, but he had no receipt for them because although the man from whom he bought them made one out he did not take it. He also told the officer he was not sure he could show him the junk yard because he went to quite a few places before he bought the radios. Asked what he was doing with them, defendant said one belonged to his car and he was taking parts from the second radio to fix it; and the third was a Ford radio which he bought for a friend, but he did not know where the friend then was. One of the radios, a Sonomatic automobile radio (Ex. 1) was identified by Johnson as having the appearance of the one taken from his car.

Officer Moreller went to Johnson's garage and examined the Buick; he found the radio missing, the hood open, the wires to the battery cut, the battery tilted and the voltage regulator missing. Under the dash board he saw a short piece of wire (Ex. 2), one end of which was attached to a fuel coupling. This piece of wire was examined by a forensic chemist and expert in comparative analysis and after conducting various experiments with the clutch wire attached

to Exhibit 1 (the radio found in defendant's possession) and the wire from Johnson's car (Ex. 2), it was his opinion that the two were once one and the same in a continuous piece of wire. This and Johnson's identification of Exhibit 1 established that the radio found in defendant's possession was the one stolen from Johnson.

An hour and a half after Officer Jackson talked to the defendant, Officer Moreller talked to defendant at the police station. He asked him where he got the three radios; defendant told him that late Sunday afternoon (January 17th) he and his cousin went to 165th and Main and bought Exhibit 1 and a white-faced radio from a man standing in front of a junk yard. Inasmuch as Johnson had parked his car in his garage around 10 p.m. on that day and the radio had not been stolen before then, the officer asked defendant to think over the time; defendant finally told him that he obtained the radio not later than 9 p.m. that night (January 17th).

Defendant took the stand in his defense and testified that he first saw the radio rather late Sunday night in Compton in someone's car trunk; that he bought it from "some guys" for $6.00 and put it in the trunk of his car at 36th and San Pedro; that he did tell Officer Jackson when he was arrested that he had gotten the radios from a junk yard around 160th and Main but that this was not true and he had lied to the officer because if the radios were stolen he did not want to get involved with the people from whom he had gotten them; and that the story about the receipt was untrue because he "personally, didn't want to go to jail." In response to the question whether he knew the radio was stolen when he bought it, he testified: "Well, I didn't actually think they had broken into those places and stolen it, but in a way I figured they must have gotten some way to sell them to the place they did, because I know they would sell for more than that."

Contending that the evidence is insufficient to show his participation in the burglary, appellant argues that there is no proof he entered Johnson's garage, and that naked possession of the radio is not sufficient to connect him with the crime.

Appellant does not dispute that he was in possession of a radio stolen from Johnson's garage. ▇▇ It is true that "Possession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, con-

duct, or declarations of the accused tending to show his guilt. [Citation.] When possession is shown, however, the corroborating evidence may be slight [citations], and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary." (*People* v. *Citrino*, 46 Cal.2d 284, 288 [294 P.2d 32].) "Thus, it is well settled that possession, coupled with false statements as to the manner in which the property came into a defendant's possession, may be sufficient to sustain a conviction for burglary." (*People* v. *Kefry*, 166 Cal.App.2d 179, 189 [332 P.2d 848].) In *People* v. *Mercer*, 103 Cal.App.2d 782 [230 P.2d 4], the jury was justified in rejecting as false the explanation as to how defendant came into possession of the stolen goods from his false and inconsistent accounts which showed a consciousness of guilt; and the court in *People* v. *Kefry, supra,* 166 Cal. App.2d 179, held that from the evidence the jury could reasonably infer defendant gave a false explanation of his possession, which together with the possession of the goods, was sufficient to support his conviction of burglary.

 A defendant who is in possession of stolen property has a duty to explain his possession in order to remove the effects of the same when taken with other suspicious facts, as a circumstance of guilt. (*People* v. *Kefry*, 166 Cal.App.2d 179 [332 P.2d 848] ; *People* v. *Golembiewski*, 25 Cal.App.2d 115 [76 P.2d 717] ; *People* v. *Abbott*, 101 Cal. 645 [36 P. 129].)

 Admittedly defendant on two separate occasions gave to police officers false, inconsistent and conflicting accounts of the manner in which he came by the stolen radio. When first accosted with the radio in his possession, defendant told Officer Jackson he had gotten it and two others at a wrecking junk yard around 160th and Main, but wasn't sure he could find it again, and that he had no receipt because although the man made one out he didn't take it. One and a half hours later he told Officer Moreller that he and his cousin bought the radios not later than 9 p.m. on Sunday afternoon from a man standing outside a junk yard at 165th and Main. (The radio in question was not stolen until after 10 p.m. that night.) On the trial, defendant testified he purchased the radios from "some guys" in Compton but didn't remember their names; then he said he did not tell Officer Jackson the truth and made up the story of the receipt because he suspected the radios were stolen, didn't want to get

involved with the people from whom he had gotten them, and didn't want to go to jail.

Under the foregoing evidence and the rules set forth in the above cited authorities, the necessary corroborating evidence unquestionably reveals a consciousness of guilt from which, together with possession, the trial judge could and did reasonably infer that at none of the three times defendant offered an account of his possession of the stolen radio did he tell the truth; that he knew the radio was stolen; that the "guys" in Compton from whom he claims he purchased the radios were fictitious persons and did not exist; and that his explanation on the stand was as false as he admitted his other two accounts had been. ■■ As pointed out in *People* v. *Citrino*, 46 Cal.2d 284 [294 P.2d 32], the corroborating circumstance accompanying possession of stolen property need be but slight, provided it is convincing; and when defendant makes an explanation as to the manner in which he came into possession of such stolen property, the question as to whether he is telling the truth in that regard rests solely with the trier of fact. (*People* v. *Taylor*, 4 Cal.App.2d 214 [40 P.2d 870].)

■ Having found defendant guilty of burglary it is obvious the trial judge rejected defendant's version of how he came into possession of the radio, and believed he actually committed the crime. That he may have been impressed with defendant's forthrightness in admitting he lied to the officer because he was afraid of going to jail, does not preclude the trial judge from doubting the veracity of the balance of his testimony, particularly in view of defendant's admission that he twice lied to police officers. Appellant, however, cites certain remarks of the trial judge in an attempt to weaken his statement that he believed beyond a reasonable doubt that defendant was guilty of burglary. Because he was "impressed with defendant's candor" in admitting he lied in order to keep out of jail, the trial judge was willing to give defendant a "break" by convicting him of receiving stolen property instead of burglary, although he flatly told defendant and his counsel in open court at the time, "I have no doubt at all as to the sufficiency of the evidence, as far as the burglary charge is concerned, not at all." Unfortunately for defendant, he insisted the court make a determination under the burglary charge and it did so, convicting him of second degree burglary. We find nothing in the record to show that after hearing all of the evidence the trial judge

was not convinced beyond a reasonable doubt of the guilt of defendant.

We do not deem the remarks of the trial judge made by him just prior to deciding the case to constitute any part of the record; and at most they constituted secondary remarks and do not impeach his finding of guilt. (*People* v. *Cartier,* 54 Cal.2d 300 [5 Cal.Rptr. 573, 353 P.2d 293]; *People* v. *Shafer,* 101 Cal.App.2d 54 [224 P.2d 778].)

For the foregoing reasons the judgment and order are affirmed.

Wood, P. J., and Fourt, J., concurred.