[Crim. No. 42. Fifth Dist. Feb. 6, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EDDIE
McNEAL, Defendant and Appellant.

Martin J. Rosen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Eddie McNeal, was convicted of burglary of the second degree and sentenced to state's prison. The crime as charged in the information was that he ". . . did wilfully and unlawfully enter a building, to wit: a tool shed on the property of Frank Cozzi, located near Dos Palos, with the intent to commit theft thereon.''

The corpus delicti was clearly proved. Mr. Cozzi's tool shed, an enclosed building but not an inhabited dwelling, was entered on November 29, 1961, in the nighttime through a hole in one corner of the structure, and a number of tools, including an electric drill and a screwdriver with a yellow handle which had been burned and a bent shaft, were stolen. The next day when Mr. Cozzi arrived at the shed at about 7:30 or 8 a.m. he saw that a hole had been made in the southwest corner of the building, and noted that tools which had been locked in the shed on the day before were missing.

Shortly before Christmas in 1961, the appellant went to the home of one Oliver Edwards in South Dos Palos and sought to borrow money from him. When Edwards refused, appellant pleaded with him, saying that he had his electric drill in his car, which he had brought from Los Angeles, and that he would sell or pledge it to Edwards. Appellant went to his automobile, which was parked nearby, and returned to the Edwards home with the electric drill. Edwards thereupon gave appellant $10 for it, with the understanding that when appellant's wife got her check for current work and appellant repaid Edwards, the electric drill would be returned to him.

In the course of his investigation of the burglary Deputy Sheriff Jess Bowling, Jr., recovered the electric drill and questioned Edwards about it; he also had a conversation with appellant at the Dos Palos jail. At that time McNeal told him that he had gotten the electric drill from some fellow who used to ride to work with him, a man named ''George,'' but he did not know his last name and did not know where he lived. On the following day appellant changed his story

and said that Wilbur Farris had sold him the drill; he claimed that he had said that a man named "George" had owned it because he "didn't want to get Farris into trouble." He also then stated that he always called Farris "George," but later admitted that he had known Farris' first name was Wilbur. The appellant admitted to Officer Bowling that he owned the 1948 black Chevrolet in which he had taken the drill to Edwards' home, and during the course of his investigation the officer found out that the license number of the automobile was FAC 850 and learned that the car had been discovered by the Highway Patrol beside the highway in Los Angeles County and that it was now stored at the Signal Cove Garage at Gorman. Soon afterwards, on his way to Los Angeles to bring back another prisoner, Officer Bowling examined appellant's car at Gorman and, finding the trunk unlocked, ascertained that there were tools in it, including the yellow-handled screwdriver which had been stolen.

Both the drill and the screwdriver were received in evidence. The only point raised on the appeal is that the screwdriver was recovered illegally in that it was not shown by the People that a search warrant had been obtained to search the car in the garage at Gorman.

It should be observed initially that entirely aside from the screwdriver, there was ample evidence to justify the guilty verdict. The applicable principles are thus stated in the case of *People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556]:

"Defendant does not attempt to controvert the evidence that the watch had been stolen and was in defendant's possession at the time of his arrest, but contends that there is insufficient corroborative evidence to show guilty knowledge that the watch had been stolen. As stated in *People* v. *Lopez* (1954) 126 Cal.App.2d 274, 278 [4] [271 P.2d 874], '[P]ossession of stolen property, accompanied by no explanation, or an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen.' 'False or evasive answers to material questions with reference to the ownership of stolen property tend to prove such knowledge.' (*People* v. *Reynolds* (1957) 149 Cal.App.2d 290, 294 [2] [308 P.2d 48]; see also *People* v. *Cole* (1903) 141 Cal. 88, 90 [74 P. 547]; *People* v. *Boinus* (1957) 153

Cal.App.2d 618, 621-622 [1, 2, 3] [314 P.2d 787]; *People* v. *Malouf* (1955) 135 Cal.App.2d 697, 707 [8, 9] [287 P.2d 834]; *People* v. *Hartridge* (1955) 134 Cal.App.2d 659, 665 [6] [286 P.2d 72]; *People* v. *Boyden* (1953) 116 Cal.App.2d 278, 288 [12, 13, 14] [253 P.2d 773]; *People* v. *Jacobs* (1925) 73 Cal.App. 334, 339-343 [2, 3, 4] [238 P. 770].)

"The jury could find that defendant's statement to the police officer, shortly after his arrest, that the watch 'was his, that he had had it for some time' was a conscious evasive and misleading explanation. Under the authorities cited above this is sufficient to show a consciousness of guilt and justify an inference that defendant received the watch with knowledge that it was stolen. (Cf. *People* v. *Wayne* (1953) 41 Cal.2d 814, 823 [4, 5] [264 P.2d 547].) It follows that such evidence tends to connect the defendant with the commission of the offense and satisfies the requirements of section 1111 of the Penal Code. (*People* v. *Santo* (1954) *supra,* 43 Cal.2d 319, 327 [9] [273 P.2d 249].)" (See also *People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32]; *People* v. *Kefry,* 166 Cal.App.2d 179, 188-189 [332 P.2d 848].)

 In this case there is no attempt to contend that a burglary did not take place, and the defendant gave false and evasive answers with respect to his possession of the electric drill. He first said it was his; he then stated that he got it from a man named George; he then contended that he received it from Wilbur Farris. There is the further fact that when he got the drill from the Chevrolet car at the Edwards home Mr. Edwards and another witness stated no one else was in the car, whereas the defendant testified that Farris was in the automobile at the time. Farris also flatly denied on the witness stand that he knew anything about the drill or that he was in the automobile at the time testified to by McNeal. The defendant admitted on the stand that he had been convicted of burglary twice before, and this fact could be considered by the jury in determining the relative credibility of the defendant as compared with the opposing witnesses.

 The screwdriver was recovered from the trunk of the defendant's automobile, which had been left by him on the highway near Gorman on the Ridge Route. The record is extremely sparse with respect to the circumstances surrounding the finding of the defendant's car by the highway patrol and the subsequent discovery · of the screwdriver. Deputy Sheriff Bowling, when asked on direct examination

". . . did you at any time examine or look into the black Chevrolet with that license number that you have just now given to the jury?" answered, "Yes, sir, I did.

"Q. And where was that? A. That was at Gorman. It is between Bakersfield and Los Angeles, up on top of the Pass.

"Q. And how did you discover where that car was located? A. I received information from the Highway Patrol that the car had been stored and it had been found abandoned beside the road, and it had been stored at Signal Cove Garage in Gorman."

It does not appear from the record whether Deputy Sheriff Bowling did or did not have a search warrant to examine the contents of the car or whether he was required to have one under the facts as they existed prior to and at the time of the search. It is sufficient to point out that the burden of proof is upon a defendant where a search warrant is required to show by evidence on *voir dire,* or by stipulation, that no such warrant was in fact obtained; in the absence of such showing by a defendant it is presumed that the officer regularly and lawfully performed his duty and that the evidence was properly admitted. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Farrara,* 46 Cal.2d 265, 268 [294 P.2d 21]; *People* v. *Citrino, supra,* 46 Cal.2d 284, 287; *People* v. *Maddox,* 46 Cal.2d 301, 304 [294 P.2d 6]; *People* v. *Lyons,* 204 Cal. App.2d 364, 367 [22 Cal.Rptr. 327]; *People* v. *Johnson,* 195 Cal.App.2d 573, 574 [16 Cal.Rptr. 1]; *People* v. *Reece,* 201 Cal.App.2d 585, 588-589 [20 Cal.Rptr. 104]; *People* v. *Pruitt,* 155 Cal.App.2d 585, 594 [318 P.2d 552]; *People* v. *Holguin,* 145 Cal.App.2d 520, 522 [302 P.2d 635]; *People* v. *Smith,* 171 Cal.App.2d 568, 570 [340 P.2d 640]; *People* v. *Guy,* 145 Cal.App.2d 481, 488 [302 P.2d 657]; *People* v. *Vaughn,* 155 Cal.App.2d 596, 599 [318 P.2d 148].)

Defendant not only failed to take the officer on *voir dire,* but the record reflects no direct evidence as to the circumstances surrounding the search. Appellant's argument concerning the search is predicated largely upon innuendo and conjecture which he derives from the record. It is axiomatic that this court cannot speculate as to what the facts surrounding the search might have been.

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.