[Crim. No. 1148.   First Appellate District, Division Two.—April 18, 1924.]

## THE PEOPLE, Respondent, v. ROBERT G. DEAN, Appellant.

[1] Criminal Law — Robbery—Pleading—Defective Information—Waiver of Objection. — In a prosecution for robbery, where the information charges that at a given time and place the defendants "did, unlawfully, willfully, feloniously and by means of force and fear against the will of" two named persons "take, steal and carry away from the personal and immediate presence of said" persons, certain personal property, to wit: a specified amount of money and two keys, "which said personal property was then and there in the possession of said" persons "and the personal property of" a named corporation, but no demurrer is interposed or other objection made in the trial court, the objection that the information does not allege that the persons from whom the property was taken were the agents of the corporation owner thereof is not available upon appeal for the first time.

[2] Id.—Possession of Property—Evidence—Crime Committed—Instructions.—In such prosecution, the evidence having shown that, while the persons from whom defendants were charged with having taken the property did not own the money, nor even know the amount in the safe, they (in the capacity of janitors and watchmen) were rightfully in the possession of the theater and its contents at the time of the robbery and were entitled to this possession as against the defendants, the court did not err in not instructing the jury that if it was not satisfied that the crime of robbery had been committed, but was satisfied that grand larceny had been committed, it was their duty to find defendants guilty of the latter offense.

[3] Id.—Testimony of Confederate—Incriminatory Evidence—Waiver of Privilege.—In such prosecution, one of the defendants, when called as a witness, having been told by the court, at the request of counsel for his co-defendant, that he might refuse, if he wished, to answer any question the answer to which would tend to incriminate himself, and he for a time having taken advantage of this privilege and having been excused from

---

1.  See 14 **Cal. Jur.** 87; '14 **R. C. L.** 208.

2.  Taking property from person other than owner as constituting robbery, note, 2 **Ann. Cas.** 264.  See, also, 23 **R. C. L.** 1142.

3.  Privilege of witnesses as to incriminating testimony, notes, 21 **Am. Dec.** 55; 75 **Am. St. Rep.** 318.  See, also, 28 **R. C. L.** 442.

the witness-stand, but later in the trial he having returned to the stand and waived his privilege, voluntarily answering the questions asked him, there was no merit in the contention that he was forced, against his will, to give testimony which incriminated him.

[4] ID.—DIVISION OF SPOILS—IMPROPER EVIDENCE—AFFIRMANCE OF JUDGMENT.—In such prosecution, it was not error to admit evidence of the movements and activities of the defendants after they committed the robbery and left the theater and until the spoils had been divided; but, even though such evidence was improperly admitted, the judgment in the case having done substantial justice, the appellate court was bound to affirm the judgment.

(1) 17 C. J., p. 53, sec. 3330.    (2) 34 Cyc., p. 1798.    (3) 40 Cyc., p. 2553.    (4) 17 C. J., p. 321, sec. 3663.

APPEAL from a judgment of the Superior Court of Alameda County. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Raine Ewell for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant Robert G. Dean, from a judgment entered upon a verdict of a jury finding him guilty of robbery.

Briefly, the facts are as follows: Robert G. Dean and Joseph A. Neff were living together in Oakland prior to February 5, 1923, the date of the crime for which defendant was convicted. During the early part of January, 1923, Dean spoke to Neff about the commission of some crime, without discussing any details. The substance of this conversation, as testified to by Neff, was as follows: "He said that he had met a friend of his that knew of a job, as he called it, to be pulled, but that they would not be able to do it because they had to have another party and wanted to know if I would consider taking part in it and I admitted I did and it was dropped then for the period of

4. See 8 Cal. Jur. 42; 8 R. C. L. 191.

about another week, when it was brought up in about the same way." About a week later Dean again asked Neff if he was willing to go in on the "job." Neff signified his willingness and Dean said the other man wanted to meet Neff. Later Dean introduced Neff to this other man whose name was given as James Carroll. At a subsequent meeting of these three Carroll discussed in detail the plans for robbing the State Theater in Oakland. It was proposed that they rob the theater early the next morning. Dean and Neff, according to arrangement, went up to Carroll's room at about 6:15 the next morning and from Carroll's room they walked up Broadway and passed the State Theater. They saw the janitor cleaning out the entrance and waited nearby until he had finished and gone inside. Dean and Neff then entered the theater. They found Albert Lohman, who acted as janitor and watchman, operating a vacuum cleaner back of the last row of seats. Dean pointed a revolver at Lohman and ordered him to throw up his hands. Dean and Neff had covered their faces with handkerchiefs upon entering the theater and they afterwards removed these coverings and placed them over the faces of the janitors whom they had bound to chairs. Dean and Neff took Lohman up to the mezzanine floor of the theater, where they blindfolded him and tied his hands behind his back with wire. About the time they reached the mezzanine floor, Louis Micotti, the day janitor and watchman, came down from the balcony where he had been working, and was ordered to throw up his hands. His hands were tied with wire and the keys to the office were taken from him. Lohman and Micotti were then taken into the ladies' dressing-room, where they were seated in chairs and bound to the chairs with wire. Neff went down to the first floor to represent himself as the janitor to any person who might come to the theater, and Dean and Carroll went into the office of the theater, which was located on the mezzanine floor about twenty-five feet away from the ladies' dressing-room where the two watchmen were confined. Later Neff was called to the office and saw that the lock on the door of the large outer safe had been pried open and the strong-box was in sight. At the request of Carroll, Neff pulled the strong-box out of the safe and laid it on the floor. Neff then went downstairs and while there heard an explosion. Later he

went back to the office and saw that the door of the strong-box had been blown loose, but was not completely off. They tried to pry it off with a bar and failing to do so Carroll said he would give it another "shot" of nitro-glycerine. Neff then went downstairs and while he was there E. H. Fitzgerald, a plumber, came to do some work at the theater. Neff told him to go upstairs and when he got to the head of the stairs Dean met him with a revolver and ordered him to throw up his hands. At the trial Fitzgerald positively identified Dean. Fitzgerald's hands were tied behind him and he was left sitting on the floor of the ladies' dressing-room with Lohman and Micotti. After this Neff again went downstairs and while there heard a second explosion. Later he returned to the office and found the door of the box completely blown off. There were still several rolls of silver in the safe and on the desk was a leather handbag packed with money. Neff carried the bag to San Francisco, where he and Dean went to a hotel and registered and divided the money. Carroll's share was wrapped up and left for him and Neff took his share and went to another hotel, where he was arrested later.

[1] Appellant's first attack is upon the information, which read, in part, as follows: "The said Joseph A. Neff and Robert G. Dean, hereinafter called the defendants, prior to the time of filing this information, and on or about the 5th day of February, 1923, in the said county of Alameda, State of California, did, unlawfully, wilfully, feloniously and by means of force and fear and against the will of Albert Lohman and Louis Micotti, take, steal and carry away from the personal and immediate presence of said Albert Lohman and Louis Micotti, the following described personal property, to-wit, Two Thousand Forty-two Dollars and twenty-five cents ($2,042.25) in lawful money of the United States and two keys, which said personal property was then and there in the possession of said Albert Lohman and Louis Micotti, and the personal property of the Oakland-San Francisco Theatre Company, a corporation, organized and existing under and by virtue of the laws of the State of California, and which said personal property was then and there of the value of $2042.25 in gold coin of the United States of America."

It is contended that the information is defective in not alleging that Lohman and Micotti, alleged to have had the possession of the personal property, were the agents of the Oakland-San Francisco Theater Company, alleged to have been the owner of the same. We see no merit in the objection, and, furthermore, no demurrer was interposed to the information or other objection made to the same in the trial court, and this objection is not such an one as is available upon appeal for the first time. (*People* v. *Matuszewski,* 138 Cal. 533 [71 Pac. 701]; *People* v. *Bryon,* 103 Cal. 675 [37 Pac. 754]; *People* v. *Pauli,* 58 Cal. App. 594 [209 Pac. 88].)

]2] It is contended that the court should have instructed the jury that if it was not satisfied that the crime of robbery had been committed, but was satisfied that grand larceny had been committed, it was their duty to find the defendant guilty of the latter offense. This contention is based upon the appellant's position that the evidence showed the offense to have been grand larceny rather than robbery, because of an alleged absence of proof that Lohman and Micotti were in possession of the money taken by defendant and his confederates. But the record contains testimony that Lohman and Micotti were janitors and watchmen; that, in addition to their duties as janitors, they were charged with the custody, protection and safeguarding of the State Theater, which was conducted by the Oakland-San Francisco Theater Company, and of everything contained in and about the premises of said theater. Lohman testified that he was "night janitor and watchman"; that he had access to all the rooms of the theater and had keys to all of them, including the office from which the money was taken. He also testified that he was instructed by the manager, Mr. Holtz, to watch the building and to let nobody in after the show was over, and that at the time he was engaged to work at the theater, his employer, Mr. Frantzen, instructed him that he was to act as watchman in addition to doing janitor work. Micotti testified that he was the day janitor and watchman; that he had been working as such at the State Theater for about two years; that when he first began this work he was told by his employer, Mr. Frantzen, foreman of the American Building Maintenance Company, and by the manager and as-

sistant manager of the theater, that he was to act as watchman in addition to doing janitor work.

While these men did not own the money, nor even knew the amount in the safe, yet they were rightfully in possession of the theater and its contents at the time of the robbery and were entitled to this possession as against the defendant.

In *O'Donnell* v. *People,* 224 Ill. 218 [8 Ann. Cas. 123, 79 N. E. 639], the charge was assault with intent to rob. Dorgan, the person assaulted, was a watchman in charge of a railroad station. The statute in that state defined robbery as "the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation." It was contended that Dorgan did not have such possession of the property in the station as to come within the above definition of the crime of robbery, and that since there could not have been a completed crime of robbery, there was no crime of assault with intent to rob. It was held that Dorgan had sufficient possession as against the defendant of all the station contained to bring the offense within the definition of attempted robbery.

In the case of *Brooks* v. *People,* 49 N. Y. 436 [10 Am. Rep. 398], the house was left in charge of a girl eleven years of age. Defendant entered the house, held a pistol to the girl's head and took her father's property from a trunk. It was held that the child had such possession of the property as to satisfy the requirements of the definition of the crime of robbery.

In the case of *Reese* v. *State,* 91 Tex. Cr. 457 [239 S. W. 619], it was held that a railroad employee who worked as a telegraph operator and ticket agent at a railroad station during the night, had "possession" of the contents of the safe in the office which was locked, and to which he did not have the combination, within the meaning of the word "possession" as defined in the crime of robbery.

Complaint is made of the refusal to give certain instructions at the request of the defendant, but we find no merit in any of these specifications of error. Most of the instructions refused were substantially given in other instructions given by the court, and the charge to the jury, as a whole, appears from the record to be full and fair to the defendant in every respect.

[3] There is also no merit in the contention that the witness Neff was forced, against his will, to give testimony which incriminated him. This witness was told by the court at the request of counsel for defendant Dean that he might refuse, if he wished, to answer any question, the answer to which would tend to incriminate himself. The witness for a time took advantage of this privilege and was excused from the witness-stand. Later in the trial he returned to the stand and waived his privilege, voluntarily answering the questions asked him.

[4] It is contended that evidence of the movements and activities of Dean, Neff and Carroll after they left the theater was improperly admitted. This evidence consisted of the testimony of Neff, one of the conspirators. It is maintained by appellant that although the testimony of one conspirator is admissible against other conspirators with regard to matters and things done in furtherance of the conspiracy, nevertheless, the conspiracy in this case was ended when the robbery was completed and any further inquiry into the activities of the conspirators was erroneous. It would seem to us that the conspiracy was not ended until the spoils had been divided, and if this be the rule, the testimony was properly admitted. But, however that may be, the outstanding fact upon this appeal is that the judgment in this case has done substantial justice. The record leaves no reasonable doubt of the defendant's guilt, quite apart from any testimony to which any objection is made. He was positively identified as one of the men who committed the robbery by one of the watchmen and by the plumber, Fitzgerald, both of whom were in the theater at the time of the robbery and saw the defendant's participation in it; and it is certain that the testimony of these witnesses, together with the portion of Neff's testimony which was admissible beyond all question and the many other facts and circumstances appearing in the record uncontradicted, overwhelmingly convict the defendant, and the jury could have brought in no other verdict than it did. In this state of the record it is idle to consider in detail the numerous contentions of defendant with regard to the admission of evidence. If any errors occurred in

these rulings we should be bound to affirm this judgment, nevertheless, after a perusal of the entire record.

The judgment and orders appealed from are affirmed.

Sturtevant, J., and Nourse, J., concurred.