[Crim. No. 1687. First Appellate District, Division One.—March 30, 1933.]

THE PEOPLE, Respondent, v. JACOB LA VERS, etc., Appellant.

Eugene B. Grattan for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton for Respondent.

KNIGHT, J.—The appellant Jack La Vers and a companion named Joe Teresi were indicted jointly by the grand jury of Santa Clara County for the murder of Herbert McAuley, a deputy sheriff, and upon trial were found guilty of murder in the second degree. From the judgment of conviction La Vers has appealed.

The circumstances leading up to the homicide as shown by the evidence adduced on the part of the prosecution were as follows: On the night of November 11, 1931, one Fred Hopkins was transporting 200 gallons of alcohol from Oakland to Los Angeles in a Packard coupe. He was accompanied by a man named Edwards. They stopped temporarily at a gasoline service station in San Leandro, Alameda County, and Edwards went to the lavatory. During his absence La Vers, Teresi and a man named Kelly drove up in a Chevrolet sedan. They had followed the Packard from Oakland. Teresi alighted, went over to the Packard, where Hopkins was seated at the wheel, and pointing a pistol at him said with an oath: "Get out of there . . . or I'll plug you." Hopkins complied, and was then ordered by Teresi to enter the Chevrolet; whereupon La Vers got in the Packard and drove away swiftly toward San Jose. Teresi then jumped in the Chevrolet with Hopkins and Kelly, and followed. After proceeding down the highway some distance both automobiles were brought to a stop, and after some conversation between La Vers, Teresi and Kelly, Hopkins was ordered to get back in the Packard. Teresi got in also. Kelly then drove away alone with the Chevrolet, and La Vers and Teresi proceeded on toward San Jose in the Packard with Hopkins sitting between them. Hopkins asked where they were going and La Vers replied: "We're going south." Hopkins said: "No, you can't go south, you

will be stopped''; and Teresi replied: ''We won't be stopped; I'll bump off the first guy that stops us.'' Hopkins then said: ''Will you bump off someone for a four or five hundred dollar gain?'' and Teresi replied: ''Yes, it is all in the racket.'' The sheriff's office at San Jose was notified of the hold-up and McAuley and another deputy sheriff named Saporito were directed to proceed up the highway to Milpitas, in Santa Clara County, and intercept the Packard; but on account of the excessive rate of speed it was traveling they were unable to stop it at that point, so they took up the chase toward San Jose. As the Packard passed through Milpitas La Vers observed one of the officers as he stood under a light in front of the sheriff's automobile, and he said to Teresi: ''There is a Dick.'' The officers overtook the Packard in San Jose, and crowding it toward the curb called out ''Sheriff's Office, pull over.'' Teresi was driving the Packard and La Vers said to him: ''It is the cops, turn here.'' As soon as the Packard stopped the officers alighted, and, approaching the Parkard on each side, ordered the occupants to get out. Teresi alighted from one side and La Vers from the other side, followed by Hopkins. As soon as Teresi and La Vers alighted they opened fire on the officers. Teresi, according to the evidence adduced by the prosecution, shot McAuley twice, killing him almost instantly. One shot pierced his heart and the other passed through his body and lodged in his spine. La Vers, using an automatic pistol, fired at Saporito, the bullet striking him in the stomach, and although critically wounded he grappled with La Vers for the possession of La Vers' pistol. During the struggle the pistol was discharged several times, two more bullets striking Saporito in the leg. In the meantime Saporito's pistol fell to the ground, and picking it up he struck La Vers over the head with it, after which he was able to wrench La Vers' pistol from him. About this time Teresi called out to La Vers to ''come on'', and they jumped into the Packard and fled. During the fusillade Hopkins was shot in the leg and La Vers was wounded also.

At the trial La Vers and Teresi claimed that the ''hijacking'' of the Packard at San Leandro was a prearranged affair with Hopkins; that after leaving San Leandro they proceeded south to dispose of the alcohol and that Hopkins was to receive a portion of the proceeds; that they did not

see the officers at all in Milpitas; and that when they were overhauled at San Jose McAuley and Saporito did not inform them they were officers, but ordered them out of the Packard and without any provocation opened fire on them. Teresi denied having shot McAuley. He and La Vers both indicated that Hopkins must have shot him. Teresi asserted that he fired no shots at all that night—that he was not even armed. The falseness of the entire stories told by La Vers and Teresi was clearly demonstrated, however, by the testimony given by Saporito and Hopkins, and by many independent circumstances which we do not find it necessary to relate here in detail. Suffice it to say the evidence shows beyond doubt that the killing of McAuley by Teresi was wanton, premeditated and unattended by any mitigating circumstances whatever.

As one of the grounds for reversal appellant contends that it was error for the trial court to allow testimony to be introduced as to what occurred at the service station in Alameda County. There is no merit in the point. It is doubtless the general rule that upon trial for one crime, evidence to show a distinct crime is inadmissible; but such rule is subject to the well-established exception that where, as here, the commission of such other crime has a logical bearing upon the element of motive for the crime charged, evidence of the commission of such other crime is admissible. (*People* v. *Argentos,* 156 Cal. 720 [106 Pac. 65.) In the present case the evidence is sufficient to establish beyond question that appellant and Teresi fully realized that the crimes they had committed in Alameda County would subject them to severe punishment, and that consequently, as declared by Teresi, they were ready, without hesitation, to take life before they would suffer themselves to be arrested. (*People* v. *Wheaton,* 64 Cal. App. 58 [220 Pac. 451].) And the mere fact that the admission of the evidence relating to such other crimes may have operated to their prejudice, did not serve as legal grounds for its exclusion since it was relevant to the material issue of motive. (*People* v. *Argentos, supra.*)

In answer to a preliminary question asked by the prosecution as to why he and McAuley went to Milpitas that night, Saporito testified that they were instructed to do so by the deputy sheriff in charge of the office at night, the

latter stating to them that a young man had been kidnaped, and that Milpitas was the best place for them to intercept the parties. There was no error in admitting the testimony. As shown by the record, the testimony was offered and received for the limited purpose of showing the reason for their activities in the case; and the court instructed the jury that it was to consider the testimony only for such limited purpose. Moreover, following Saporito's testimony in this regard, the entire story of the kidnaping was revealed to the jury by the victim thereof; and, as already pointed out, such evidence was clearly admissible.

Appellant contends also that under the facts established by the prosecution he was guilty of nothing more than conspiracy because admittedly he did not actually fire the shot that killed McAuley. The contention is frivolous. As already shown the evidence proves that Teresi killed McAuley while Teresi was engaged in a criminal enterprise with appellant, and it has long since been declared the law of this state that where two or more persons jointly engaged in an expedition of crime, and as here, are prepared to kill any police officers or others who may interefere with their plans, all are equally guilty of any crime that is committed as the natural and probable consequence of such enterprise, whether one of them personally commits the act or whether its commission was the act of any one or more of the associates in carrying out the common purpose. (*People* v. *Bringhurst,* 192 Cal. 748 [221 Pac. 897]; *People* v. *Wheaton, supra; People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861]; *People* v. *Woods,* 147 Cal. 265 [81 Pac. 652, 109 Am. St. Rep. 151]; *People* v. *Lawrence,* 143 Cal. 148 [76 Pac. 893, 68 L. R. A. 193]; *People* v. *Vasquez,* 49 Cal. 560.)

Nor was there any abuse of discretion on the part of the court in permitting the prosecution to recall appellant for further cross-examination after the defense had rested its case. It was appellant's constitutional right, of course, to refrain from testifying at all in the case; but having waived such right by testifying as a witness in his own behalf, he was, like any other witness, subject to cross-examination; and he has failed to point out wherein his rights were at all prejudiced by the mere fact that after having rested his case he was recalled to answer a few additional questions

concerning a conversation about which he concedes the prosecution had the right to interrogate him on cross-examination.

Appellant further complains of the refusal of the trial court to give some eleven instructions proposed by the defense. Two of them related to the crime of manslaughter, based on the theory of "a sudden quarrel or heat of passion". The others purported to deal with the law of self-defense. Nowhere in the record on appeal, however, is the court's charge to the jury set out; and consequently for aught we know the jury may have been instructed on all matters to which appellant's proposed instructions related; and upon that ground alone we might properly hold that no error has been shown. (*People* v. *Bourke*, 66 Cal. 455 [6 Pac. 89].) However, aside from the defective state of the record described, it is evident that so far as the killing of McAuley is concerned, the elements of manslaughter and self-defense were nowhere involved in the case, for the reason that Teresi, for whose acts appellant too was held criminally responsible, made no claim at any time that he shot McAuley upon a sudden quarrel or heat of passion, or in self-defense. He positively denied having shot him at all; in fact, he said that he was not even armed. The instructions upon those two subjects were therefore properly refused.

After reviewing the entire record it is our conclusion that if the verdict in this case has resulted in any miscarriage of justice it is because the jury failed to find Teresi and appellant guilty of a higher degree of murder.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.