[Crim. No. 2398. Second Appellate District, Division One.—September 25, 1933.]

THE PEOPLE, Respondent, v. ELBERT L. CORKERY, Appellant.

Leonard Wilson for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction of the crime of robbery, as well as from the order by which his motion for a new trial was denied.

Omitting unnecessary details which relate to the facts and circumstances that are connected with the robbery in question, it appears that in the course of its perpetration by defendant and another man, after one of the two victims

had surrendered certain personal property to defendant's companion in the crime, one of the said victims screamed for help, whereupon both the robbers started to leave the scene of the robbery and appellant did immediately depart therefrom. However, instead of continuing in his flight with appellant in the projected escape, the second robber temporarily remained for the purpose of completing the robbery, and thereupon proceeded to and did take certain other personal property from the immediate possession of the said victims.

The principal point presented by appellant as a reason for the reversal of the judgment and the order by which his motion for a new trial was denied arises from the asserted fact that before the crime was completed he abandoned his intention to commit the crime of robbery and consequently that at most he was guilty of attempt only to commit the offense. But the evidence clearly shows that, at a time before the defendant departed from the scene of the robbery, a part of the personal property of the victims had been taken from them. Appellant's guilt, therefore, was complete before he made any attempt to withdraw from the commission of the offense. However, he contends to the effect that after he had abandoned the effort to further despoil the victims of their property, he was no longer liable for what occurred between his companion in the crime and the persons who were being robbed; and consequently, that the admission of evidence that related thereto was prejudicial to him in that its reception may have discredited, and probably did discredit, the evidence offered by him for the purpose of establishing his innocence.

By many authorities, the principle is announced that escape by the perpetrators of a crime in general is part of the conspiracy to commit the crime (*People v. Woods*, 147 Cal. 265 [81 Pac. 652, 109 Am. St. Rep. 151]; *People v. Kauffman*, 152 Cal. 331 [92 Pac. 861]; *People v. Albritton*, 110 Cal. App. 188 [294 Pac. 76]; *People v. Wheaton*, 64 Cal. App. 58 [220 Pac. 451]); and consequently that the act or declaration of one of the conspirators committed or made by him respectively during the time of such escape is binding upon each and all of the conspirators; from which it should follow that at least during the time that appellant herein was engaged in making his

escape from the scene of the robbery he was liable for any act which was committed by his aider and abettor in the commission of the crime.

■ It should be clear that an abandonment of an intention to commit a criminal offense should be a free and voluntary act on the part of the person seeking to commit it. In order that it be entitled to be thus characterized, whatever may be deemed a worthy, inducing cause, or the legal effect of such an abandonment, it is patent that the withdrawal from the attempt should not be immediately caused by a desire to escape identification, detection or arrest. In other words, where an overt act has disclosed the intention of a person to commit a criminal offense, his subsequent intention to abandon, or to withdraw from, the commission of such offense, or its consequences, should be manifested by his own free and voluntary act, as distinguished from conduct induced or prompted by outside or foreign influences.

In section 226, volume 1 (eleventh edition), Wharton's Criminal Law, where authorities are cited in support thereof, the rule is announced as follows:

"If an attempt be voluntarily and freely abandoned before the act is put in process of final execution, there being no outside cause prompting such abandonment, then this is a defense; but it is otherwise when the process of execution is in such a condition that it proceeds in its natural course, without the attempter's agency, until it either succeeds or miscarries. In such a case, no abandonment of the attempt, and no withdrawal from its superintendence, can screen the guilty party from the results." See, also, *State* v. *Gray*, 19 Nev. 212 [8 Pac. 456].

In *State* v. *Forsha*, 190 Mo. 296 [88 S. W. 746, 757, 4 L. R. A. (N. S.) 576], which in its essentials is not dissimilar in its facts to those of the instant case, it is said:

"We are unwilling to sanction as the law of this state that a defendant can first, by words and actions, put in operation a difficulty, or aid and abet in the commencement of it, and, after having by his course of conduct brought the principal actors into a deadly contest, that he can then flee from the scene of the struggle and thereby relieve himself absolutely from the results of such fatal difficulty.

Such is not the law of this state, and the court very properly refused the instructions requested upon that subject."

In the case of *Sheppard* v. *State*, 172 Ala. 363 [55 So. 514, 515], it is said:

"If this defendant entered into the conspiracy to murder the deceased, which resulted in the accomplishment of its design, she could not relieve herself of guilt by abandoning the actual attack after taking part in its inception."

So in *State* v. *Taylor*, 173 La. 1010 [139 So. 463, 474], the court approved the instruction given by the trial court that "A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme which he has helped to devise and carry forward because as the result either of fear or even of a better motive he concludes to run away at the very instant when the act in question is about to be committed and when the transaction which immediately begets it has actually been commenced."

In *Commonwealth* v. *Doris*, 287 Pa. 547 [135 Atl. 313, 315], it appeared that immediately following the commission of the robbery and at the time when one of the robbers who had been arrested was being held in custody, another of the robbers in attempting to make his escape shot and killed a police officer. With reference to such a situation, the supreme court of Pennsylvania made the following declaration of the law:

"It is said, however, in the case of Doris, that, as he had been seized by officers of the law shortly after the retreat began, therefore he cannot be held responsible for what later happened. This overlooks the fact that he joined in the common design and is responsible for the acts of each naturally to be expected to occur in carrying it out. It is true that he could have abandoned the enterprise and given sufficient time to the others to do likewise, and thus have relieved himself from liability for subsequent acts of his fellows. But he cannot escape responsibility for an act which is the probable consequence of the criminal scheme which he has helped to devise and carry forward. To have this result, there must be an actual and effective voluntary withdrawal before the act in question has become so imminent that its avoidance is practically out of the question." (Citing authorities.) See, also, *People* v. *Chapman*, 224

N. Y. 463 [121 N. E. 381]; *People* v. *Nichols,* 230 N. Y. 221 [129 N. E. 883]; *Conrad* v. *State,* 75 Ohio St. 52 [78 N. E. 957, 8 Ann. Cas. 966, 6 L. R. A. (N. S.) 1154]; *State* v. *Klein,* 97 Conn. 321 [116 Atl. 596].

In *People* v. *Ortiz,* 63 Cal. App. 662, 670 [219 Pac. 1024], the court said:

"Responsibility of an accessory 'does not cease simply because, after starting the ball, he changes his mind, and tries, when too late, to stop it. To emancipate him from the consequences, not only must he have acted in time, and done everything practicable to prevent the consummation, but the consummation, if it takes place, must be imputable to some independent cause.' (Wharton's Criminal Law, 11th ed., sec. 267.)"

 From the record herein, it is also noted that, with reference to evidence introduced by the prosecution relative to the pertinent events which occurred after the escape of appellant had been effected, the only objection interposed by said defendant was as to testimony which was proposed to be given by one of the victims of the robbery, and that such objection consisted in the following statement by one of the attorneys then representing said defendant, to wit:

"We would like to object to any testimony, as being binding on the defendant Corkery, from this time on, after the man whom she identifies as Corkery, left the house."

All the remaining testimony, not only of that witness but as well of the other victim of the robbery, was introduced in evidence without objection by defendant. In addition thereto, it should be observed that no instruction to the jury was requested by the defendant relative to the determination by it of the question of whether the acts and conduct of the said defendant constituted a withdrawal or abandonment by him of his intention to commit the crime of robbery. It follows that neither of the contentions of appellant can be sustained.

It is ordered that the judgment and the order by which the motion of defendant for a new trial was denied be, and they are, affirmed.

Conrey, P. J., and York, J., concurred.