[Crim. No. 7176. Second Dist., Div. Two. Dec. 12, 1960.]

THE PEOPLE, Respondent, v. LLOYD JAMES WELLS et al., Appellants.

Dupree Louis Bolton, in pro. per., Donald G. Griffin, under appointment by the District Court of Appeal, and Anderson & Griffin for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Respondent.

ASHBURN, J.—Defendants Bolton and Wells appeal from conviction of second degree burglary. Robert Smith who was convicted with them did not appeal.

■ The principal point raised by both appellants is insufficiency of the evidence and we must be guided by the rule set forth in *People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911] : ''The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. . . .

■ 'The court on appeal ''will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. ■ ■ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground'' of insufficiency of the evidence, ''it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . ■ We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.'' ■ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. . . .' ''

The charge is burglary of the office and building occupied by Los Angeles Schools Equipment Company, located in Gardena, county of Los Angeles. Robert Ellis and his brother were working in the yard back of the shop; he noticed two colored boys near the large open front door of the building; asked ''may we help you,'' one of them made a negative motion and both walked away. Neither one was carrying anything. They were at such a distance that Robert Ellis testified he could not identify them and his brother did not testify. This was about 2 :30 to 2 :45 in the afternoon of August 26th, 1959. Within a few minutes, not over 15, Robert went into the office and noticed that an adding machine, typewriter and portable sander were missing from the office. They were returned by

the police about a week later and were adequately identified at the trial.

About 5 or 10 minutes after 3 of that same afternoon, State Traffic Officer Kreipl stopped a car which had made an improper turn at the intersection of Alameda and Ord Streets, 3½ to 4 miles from the Schools Equipment Company plant. Defendant Wells was driving, Smith in the right front seat and Bolton in the right rear.[1] The car belonged to Bolton's brother. The officer asked for Wells' driver's license and that he get out of the car so a check of the brakes could be made. Wells complied and the brakes when tested proved defective. The officer saw on the floor in the rear some articles covered by a white Navy blanket with the handle of what proved to be a sander exposed to view and bearing the word "Skill" on it. He asked Wells to go to the police car with him, about 20 feet to the rear, while he wrote a ticket for traffic violation and faulty brakes. As he passed the Bolton car at that time he saw that the handle marked "Skill" was also covered by the blanket. Suspicious, he telephoned the Compton Police about a possible burglary and asked them to send someone to him. At 3:15 Officer Baguley of the Compton Police arrived and he and Kreipl went to the Bolton car. Bolton and Smith had disappeared. The officers lifted the blanket and there lay the adding machine, typewriter and sander which had been taken from the Schools Equipment Company plant; also an electric screw driver which did not belong to that company. Wells was not given a traffic citation but was arrested upon the burglary charge.

Clearly there had been a burglary and in less than an hour the three defendants were found in possession of the stolen property. This fact constitutes some evidence that they were the burglars but would not be sufficient, standing alone, to sustain a conviction of burglary. "Possession alone of property stolen in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary. There must be corroborating evidence of acts, conduct, or declarations of the accused tending to show his guilt. [Citations.] When possession is shown, however, the corroborating evidence may be slight [citations], and the failure to show that possession was honestly obtained is itself a strong circumstance tending to show the possessor's guilt of the burglary. [Citations.]"

[1]While the testimony does not disclose that defendants were colored men, it does appear that they were under observation of the jury at the trial and we are entitled to assume in aid of the verdict that the jurors saw them to be three colored men.

(*People* v. *Citrino,* 46 Cal.2d 284, 288 [294 P.2d 32].) Many cases say that the additional evidence need be but slight. (*People* v. *Russell,* 120 Cal.App. 622, 625 [8 P.2d 209]; *People* v. *Morris,* 124 Cal.App. 402, 404 [12 P.2d 679]; *People* v. *Walker,* 160 Cal.App.2d 736, 740 [325 P.2d 594]; *People* v. *Wissenfeld,* 36 Cal.2d 758, 763 [227 P.2d 833]; *People* v. *Holland,* 82 Cal.App.2d 310, 312 [186 P.2d 58]; *People* v. *Kefry,* 166 Cal.App.2d 179, 188 [332 P.2d 848].) The possession of stolen property is a fact which is to be considered with all other facts bearing upon the identity of the burglar.

██ Indeed, it is said, in *People* v. *Goodall,* 104 Cal.App.2d 242, 247 [231 P.2d 119]: "Where one is found to be in possession of stolen articles, it may be presumed not only that he stole them but also made use of the means by which access to them was obtained."

██ So far as Bolton is concerned his possession of the stolen property, plus his flight in the face of impending investigation, made a case against him. *People* v. *Scott,* 66 Cal. App. 200, 203 [225 P. 767]: "It is defendant's contention that this evidence shows only that the stolen property was found in his possession, and he cites the well-established rule that mere possession of stolen property, however recent, is not sufficient to warrant a conviction of larceny. Defendant apparently overlooks the fact, established at the trial, that after his arrest he escaped from the officers. Flight of a defendant, under the circumstances proven in this case, is always a circumstance to be taken into consideration by the jury with the other facts proven in the case, in determining the guilt or innocence of a defendant. We think that there can be no question that evidence that the stolen property was found in the possession of the defendant shortly after the same had been stolen, coupled with evidence of the flight of the defendant after his arrest, was suffcient to justify the jury in finding a verdict of guilty." ██ Flight, like possession of stolen property, is not enough, standing alone, to sustain a conviction (Pen. Code, § 1127c; Fricke on Criminal Evidence [5th ed.], p. 82); but they are strong enough to support each other, to supply that slight corroboration which each needs.

The situation of Wells is not quite so simple.

Obviously the three defendants were acting in concert with each other in transporting the stolen property with an ultimate objective of disposing of it in some manner. That constitutes conspiracy. ██ In criminal cases it is not necessary to plead the conspiracy as a basis for imputing the act of one

conspirator to all of them (*People* v. *Williams,* 145 Cal.App.2d 163, 167 [302 P.2d 393] ; *People* v. *Tanner,* 3 Cal.2d 279, 299 [44 P.2d 324] ). Obviously such a conspiracy as the one at bar "was not ended until the spoils had been divided." (*People* v. *Dean,* 66 Cal.App. 602, 608 [226 P. 943].) To the same effect, see also *People* v. *Fay,* 82 Cal.App. 62, 68 [255 P. 239] ; *People* v. *Ross,* 46 Cal.App.2d 385, 396 [116 P.2d 81] ; 11 California Jurisprudence 2d, section 8, page 227. Each conspirator was bound by the acts of his confederates, even though they were dictated by the exigencies of the moment, if within the general scope of the conspiracy ; for instance, evading or resisting arrest falls in this category. "By many authorities, the principle is announced that escape by the perpetrators of a crime in general is part of the conspiracy to commit the crime [citations] ; and consequently that the act or declaration of one of the conspirators committed or made by him respectively during the time of such escape is binding upon each and all of the conspirators ; from which it should follow that at least during the time that appellant herein was engaged in making his escape from the scene of the robbery he was liable for any act which was committed by his aider and abettor in the commission of the crime." (*People* v. *Corkery,* 134 Cal.App. 294, 296 [25 P.2d 257].)

Fricke on Criminal Law (7th ed.), pages 123-124 : "It does not follow that, when the declared object of a conspiracy has been accomplished, the conspiracy is at an end and that there is no further liability to any of the conspirators because of an act of one of its members. In a conspiracy to commit a crime the conspiracy continues not only until that crime has been committed but until the ultimate object of the crime has been accomplished and the liability of the conspirators, as such, extends beyond the mere consummation of the crime. (*People* v. *Tinnin,* 136 Cal.App. 301 [28 P.2d 951] ; *People* v. *Kavanaugh,* 107 Cal.App. 571 [290 P. 594] ; *People* v. *Wagner,* 133 Cal.App. 775 [24 P.2d 927] ; *People* v. *Lorraine,* 90 Cal.App. 317 [265 P. 893].) Thus a conspiracy to commit the crime of robbery is not ended until the spoils of the robbery have been divided (*People* v. *Dean,* 66 Cal.App. 602 [226 P. 943]) or, if the crime be kidnaping for ransom, until the ransom has been paid. (*People* v. *Wagner,* 133 Cal.App. 775 [24 P.2d 927].)

"While it may not be expressly so agreed, it is obviously tacitly understood by the persons who conspire to commit a criminal offense, and the law is justified in assuming, that

the conspiracy includes the evading and resisting of arrest and acts done to that end (*People* v. *Welch,* 89 Cal.App. 18 [264 P. 324]; *People* v. *Corkery,* 134 Cal.App. 294 [25 P.2d 257]; *People* v. *Thomas,* 135 Cal.App. *645* [654] [27 P.2d 765]; *People* v. *La Vers,* 130 Cal.App. 708 [20 P.2d 967]; *People* v. *Kauffman,* 152 Cal. [331] 334 [92 P. 861]) and, as indicated in the cases cited, a murder in such an effort to escape arrest makes each conspirator guilty thereof. (See also cases cited under this title.)

''The common design of the conspiracy 'may extend in point of time beyond the actual commission of the act constituting the crime for which the accused is being tried, such as for the purpose of concealing the crime, securing the proceeds thereof, or bribing or influencing witnesses. . . . Of course it must reasonably appear that such acts were committed in furtherance of the common design of the conspiracy. . . .' (*People* v. *Suter,* 43 Cal.App.2d 444 [111 P.2d 23]; see also *People* v. *Ross,* 46 Cal.App.2d 385 [116 P.2d 81]; *People* v. *Derenzo,* 46 Cal.App.2d 411 [115 P.2d 858].)''

 Under these circumstances flight of Bolton and Smith, two of the conspirators, becomes part of the res gestae and admissible against Wells. Indeed it was proved without objection from him. It is a fair inference that the guilty knowledge which impelled Bolton and Smith to flight was shared by defendant Wells who, in the immediate presence of the officers, had no chance to flee.

 An additional rule here applicable is that ''a defendant who was in possession of stolen property has a duty to explain his possession in order to remove the effect of possession as a circumstance, taken with other suspicious facts, of guilt. [Citations.]'' (*People* v. *Kefry, supra,* 166 Cal.App.2d 179, 189.) Many cases attest to this principle. (*People* v. *Miller,* 45 Cal.App. 494, 496 [188 P. 52]; *People* v. *Wissenfeld, supra,* 36 Cal.2d 758, 763; *People* v. *Holland, supra,* 82 Cal.App.2d 310, 313; *People* v. *Citrino, supra,* 46 Cal.2d 284, 288-289; *People* v. *Taylor,* 4 Cal.App.2d 214, 217 [*40* P.2d 870]; *People* v. *Russell,* 34 Cal.App.2d 665, 669 [94 P.2d 400]; *People* v. *Abbott,* 101 Cal. 645, 647 [36 P. 129]; *People* v. *Grimes,* 113 Cal.App.2d 365, 372 [248 P.2d 130].) The common sense basis appears from this language of *People* v. *Miller, supra,* 45 Cal.App. 494, 496: ''The possession of the property shortly after the commission of the crime is, of course, an important circumstance. Appellant's failure to offer any explanation when arrested could scarcely be of less

significance in the minds of the jury than a confession of guilt. The jurors would naturally and reasonably conclude that if he had purchased the property or acquired possession of it honestly he would be swift to declare and explain the circumstances that vindicated his conduct. If he had purchased it from a woman in Redding or anyone else, is there anyone so unsophisticated as to believe that he would not have so declared and at least have made an effort to locate the vendor? His silence, when it would have been so easy for him to speak if innocent, is quite persuasive and convincing.''

The transcript is silent upon this subject. No effort was made by appellant to show, by cross-examination or otherwise, that he did make any statement, voluntarily or otherwise, which had any tendency to explain his possession of the stolen goods as innocent possession. We are entitled in this state of the record, and in aid of the verdict, to assume that no such effort to explain his possession was made by appellant at any time.

Finally, defendant did not elect to testify. While his testimonial silence did not close any hiatus in the proof, it did emphasize the unfavorable inference flowing from the evidence above reviewed. (*People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3] ; *People* v. *Ashley,* 42 Cal.2d 246, 268-269 [267 P.2d 271].)

Appropriate, by way of conclusion to the discussion of this question of sufficiency of the evidence, is the following: ''In a case such as this, all the circumstances must be considered together in determining whether the inference of guilt may be found. (*People* v. *Goodall,* 104 Cal.App.2d 242, 247-249 [231 P.2d 119].) When so considered there is ample evidence to support the judgment.'' (*People* v. *Gould,* 111 Cal.App.2d 1, 8 [243 P.2d 809].)

Appellant Wells argues that there was prejudicial misconduct on the part of the deputy district attorney in his argument concerning defendant's failure to testify. He refers to a portion of the following excerpt from the transcript: ''MR. FUKUTO: The Court will instruct you that a person in possession, I believe, of stolen property will have a reasonable opportunity to show his possession of these goods, his intent, and if he fails to do so that is also a circumstance tending to prove his guilt. . . . Not one of those three defendants came to the stand yesterday and told you how they in fact came into possession of these items. There is no question they were stolen from this particular shop. Not one of

them came on the stand and explained to you. They had reasonable opportunity. They had your attention, your captive audience in this particular case. They had the opportunity and they failed to explain how they came into legitimate possession of these particular goods. I ask you to follow that particular instruction, that that also is a circumstance that tends to show the defendants' guilt.'' The instruction given by the court is CALJIC 203, which is set forth in the margin.[2] Counsel for Wells protested that the deputy district attorney was misstating the law but he made no assignment of misconduct and no request that the jury be instructed to disregard the objectionable statements. Any harmful effect of the argument could have been removed by an appropriate instruction if requested. Hence appellant is not now in position to urge the error, if one there be. (Fricke on Criminal Procedure [5th ed.], p. 463.) We are not implying, however, that there was any misconduct; we simply do not decide the point.

■■■ Appellant Bolton argues that the court failed to give ''a clear, understandable, and descriptive, definition of Burglary of the 2d Degree as defined by law, which a Jury of laymen could have understood.'' The instruction given is set forth in the margin.[3] There is no merit in this contention.

[2] ''The mere possession of stolen property, however soon after the taking, unexplained by the person having possession, is not sufficient to justify conviction. It is, however, a circumstance to be considered in connection with other evidence in determining the question of innocence or guilt. If you should find from the evidence that a burglary was committed on the premises involved in this case and that thereafter the defendant was found in possession, or claimed to be the owner, of property stolen from the burglarized premises, such a fact would be a circumstance tending in some degree to show guilt, although not sufficient, standing alone and unsupported by other evidence, to warrant your finding him guilty. In addition to proof of possession of such property there must be proof of corroborating circumstances tending of themselves to establish guilt. Such corroborating circumstances may consist of the acts, conduct, falsehoods, if any, or other declarations, if any, of the defendant, and any other proved circumstance tending to show the guilt of the accused.

''One who is found in the possession of property that was stolen from burglarized premises is bound to explain such possession in order to remove the effect of that fact as a circumstance, to be considered with all other evidence, pointing to his guilt; and if he gives a false account of how he acquired that possession or, having reasonable opportunity to show that his possession was honestly acquired, he refuses or fails to do so, such conduct is a circumstance that tends to show his guilt.''

[3] ''There are two degrees of burglary. Every burglary of an inhabited building committed in the nighttime, that is, between sunset and sunrise, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon, or who, while in the commission

The instruction is a paraphrase of section 460, Penal Code, and is clear and comprehensive.

■ Bolton also claims an unlawful search and seizure of the stolen articles taken from his car. No objection to the receipt of this evidence was made in the trial court and it is too late to advance the point here. (*People* v. *Farrara,* 46 Cal.2d 265, 268 [294 P.2d 21]; *People* v. *Shannon,* 147 Cal.App.2d 300, 303 [305 P.2d 101]; *Robison* v. *Superior Court,* 49 Cal.2d 186, 187 [316 P.2d 1].) Moreover, the police had adequate grounds for the search after Bolton had surreptitiously covered the handle of the sander and had fled the scene.

Defendants Bolton and Wells each appeal from the judgment and order denying his motion for new trial. The judgment is affirmed as to each appealing defendant and both orders denying new trial are affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied January 3, 1961, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1961. Traynor, J., Peters, J., and Dooling, J., were of the opinion that the petition should be granted.

---

of such burglary, arms himself with a deadly weapon, or who, while in the commission of such burglary, assaults any person, is burglary of the first degree. All other kinds of burglary are of the second degree.

"If you should find the defendant guilty of burglary, it will be your duty to determine the degree thereof and to state that degree in your verdict."