Filed 9/3/21  P. v. Osunapetri CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B306083 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA121155) |
| v. | |
| JIMMY OSUNAPETRI | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Steven D. Blades, Judge.  Affirmed.

Carolyn D. Phillips, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

# INTRODUCTION

Appellant challenges his conviction of two counts of unlawfully taking or driving a motor vehicle in violation of Vehicle Code section 10851, subdivision (a).  On appeal, he argues the evidence was insufficient to support a conviction for taking or to support more than one post-theft driving offense.  He asks us to vacate the second count.

We disagree with appellant and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In an Information filed June 25, 2019, appellant Jimmy Osunapetri was charged with two counts of fleeing a pursuing peace officer's motor vehicle while driving recklessly—Counts 1 and 2—in violation of Vehicle Code[1] section 2800.2, and two counts of unlawfully taking or driving a vehicle—Counts 3 and 4—in violation of section 10851, subdivision (a).  The information further alleged appellant had served four prior prison terms (Pen. Code, § 667.5, subd. (b)) and had sustained a prior strike conviction that was also a serious and/or violent felony (Pen. Code, §§ 666.5, 667, subd. (d), 667.5, subd. (c), 1170, subd. (h), & 1170.12, subd. (b)).  Count 3 was alleged as a felony pursuant to Penal Code section 667.5 based on appellant's alleged prior conviction for violating section 10851.

Appellant entered pleas of not guilty to all four counts.  He admitted the prior conviction and four prior prison term allegations.

On August 26, 2019, trial by jury commenced.

---

[1]     Further undesignated statutory references are to the Vehicle Code.

I.    Trial

The testimony and evidence at trial established the following:

Andy Villa was the registered owner of a 1997 black Honda Accord. He gave his son Andrew permission to drive the car on an ongoing basis. Andrew maintained possession of the car and was given the only key to the car. No one else was given permission to drive the car.

Between 5:00 p.m. and 7:00 p.m. on May 26, 2019, Andy visited Andrew, who was staying at a hotel. Andy noticed the Honda Accord "was parked in a good area" when he "went over to the motel to go talk . . . and hang out for a bit . . . . That was the last time I saw it."

Early in the morning of May 27, 2019, Andy received a call from his son who was "pretty frantic, and told [him] the car was gone." When Andy arrived on scene between 8:00 and 10:00 a.m., Andrew had already reported the theft to the police.

Later that day, at approximately 1:52 p.m., Rialto Police Department Officer Adam Acuna was in a patrol car when he observed a black Honda Accord drive past him in the opposite direction. Officer Acuna saw the individual in the driver's seat and recognized him as appellant, based on "multiple prior contacts over the last 11 and a half years." He began to follow appellant in the Honda Accord, and activated his red and blue lights to conduct a traffic stop after observing appellant "bl[o]w through the stop sign" at a three-way traffic stop. Officer Acuna looked up the vehicle license plate and learned the "vehicle had been reported stolen." He notified Baldwin Park dispatch and activated his patrol car's sirens.

Officer Acuna observed appellant driving at an "excessive speed in a residential area," approximately 60 miles per hour in a 25 mile per hour zone. Officer Acuna observed children playing, people barbecuing, and families out as it was Memorial Day weekend. Appellant was driving into opposing traffic lanes at excessive speed, causing Officer Acuna's sergeant and watch commander to terminate the pursuit as other people's safety and lives were in danger.

At 7:22 p.m. that evening, Baldwin Park Police Officer Robert Larivee, driving a patrol vehicle, saw a black Honda Accord "without a front license plate" matching the description of the vehicle he "was informed was involved in a vehicle pursuit earlier in the day." As Officer Larivee approached the vehicle, he identified the driver as appellant based on previous contacts with him. Officer Larivee notified the Baldwin Park Police dispatch about the "stolen vehicle and that the driver was Jimmy Osunapetri, who was an outstanding subject from earlier in the day." He then activated his car's overhead red and blue lights to conduct a traffic enforcement stop. Appellant did not stop the car and accelerated, leading Officer Larivee to activate his sirens and start a pursuit.

While following appellant, Officer Larivee witnessed him commit many moving traffic violations, including driving through a red light multiple times, failing to come to a stop at a stop sign multiple times, driving 50 miles per hour in a 25 mile per hour speed zone. There were many cars in the busy intersections and many pedestrians along the sidewalks in the residential areas. At one point, appellant was traveling at such a fast speed that when he hit[a significant dip in the intersection, his vehicle completely went airborne, so all four wheels lifted off the ground.

4

When the car landed back on the road, the collision of the undercarriage of the vehicle and road caused sparks. At some point appellant was pursued by six police vehicles.

Baldwin Park Police Officer Stephan Holguin was one of the officers who responded to Officer Larivee's call for assistance, joining the pursuit. Officer Holguin recognized the driver of the Honda Accord as appellant, with whom he had approximately four prior contacts.

The officers then followed appellant who took a "dirt access road that leads into Starline Nursery [which] is private property, and [was] closed off by . . . a double swinging gate." Appellant "drove through the secured gate" which "literally exploded open." When appellant reached a dead end on the dirt access road, he stopped, parked the vehicle, and began running away. When he reached Judith Street, appellant stopped running and began to walk, at which point Officer Holguin exited his vehicle, unholstered his department-issued firearm and ordered him onto the ground. Appellant was then arrested.

While inspecting the Honda Accord, Officer Larivee "look[ed] for . . . any type of interior stripping [because] most of the time when people do steal cars they'll strip the head units or radios out because they can resell that." Officer Larivee saw "there was minor stripping and that the stereo had been partially removed." Additionally, upon checking the ignition, he noticed "there was a key actually still lodged in the ignition port, so [he] went to remove the key and had a pretty difficult time actually removing the key from the ignition." Once he removed the key, he examined it, and noted it had been shaved or altered. Officer Laravee testified that generally, for older model cars such as a

1997 Honda Accord, the ignition port begins to wear down so the cars can be started with a shaved key.

II.     Verdict and Sentencing

On August 28, 2019, a jury found appellant guilty of all four counts.

On April 16, 2020, appellant was sentenced to state prison for an aggregate term of 10 years eight months.  The court imposed a $40 court security fee for each count (totaling $160) per Penal Code section 1465.8, subdivision (a)(1), a $30 criminal conviction assessment for each count (totaling $120) per Government Code section 70373, a $300 restitution fine per Penal Code section 1202.4, subdivision (b), and a $300 parole restitution fine per Penal Code section 1202.45, which was stayed.

Appellant timely appealed.

## DISCUSSION

Appellant argues there was "no evidence of taking and evidence of only one driving."  He argues he could have been convicted of only one section 10851 violation, not two, and contends that his conviction and sentence on one of those counts must be vacated.

When reviewing an appeal challenging the sufficiency of the evidence to support a criminal conviction, the appellate court "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 562.)  Substantial evidence must be " 'of ponderable legal significance . . . reasonable in nature, credible,

6

and of solid value.' " (*Id.* at p. 576.)  Applying this test to the present case, we conclude substantial evidence supports two violations of section 10851.

Appellant was charged in Counts 3 and 4 with violating section 10851, subdivision (a), which provides it is a crime for any person to drive or take "a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle."  (§ 10851, subd. (a).)

The "taking and the driving of a vehicle could constitute separate and distinct violations of section 10851[, subdivision] (a), at least where . . . the driving was not part of [a] ' "continuous journey away from the locus of the theft." ' " (*People v. Garza* (2005) 35 Cal.4th 866, 880, italics omitted.)  Thus, a "defendant who steals a vehicle and then continues to drive it after the theft is complete commits separate and distinct violations of section 10851[, subdivision] (a)."  (*Ibid.*)

Here, the Honda Accord was stolen sometime between 7:00 p.m. on May 26, 2019 and 8:00 a.m. the next morning on May 27, 2019.  Appellant was seen driving the stolen vehicle twice on May 27, 2019—once at 1:52 p.m. when the first police pursuit began and again at 7:22 p.m. when the second police pursuit began.

Appellant argues "no one saw the car being taken," "no one saw who took the car" and "no evidence indicated how appellant came into possession of the Honda Accord." Even so, "possession of recently stolen property is so incriminating that to warrant conviction, there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the

defendant tending to show his guilt." (*People v. McFarland* (1962) 58 Cal.2d 748, 754.) Appellant was found to be in possession of the stolen vehicle at two different time periods on May 27, 2019, including when he was apprehended by police.

Appellant's conduct and reaction to Officer Acuna activating his patrol car's red and blue lights behind the Honda Accord was to "blow through the stop sign" and accelerate away. Similarly, when appellant was pursued the second time on May 27, 2019, he continued to drive away and flee from police until he reached a dead end. At this point, appellant parked the vehicle and once more fled—this time, on foot. Appellant's possession of the stolen property, plus his flight in the face of impending investigation, made a sufficient case against him. (See *People v. Wells* (1960) 187 Cal.App.2d 324, 329 ["Flight of a defendant . . . is always a circumstance to be taken into consideration by the jury with the other facts proven in the case, in determining the guilt or innocence of a defendant."] A rational trier of fact could have inferred that appellant took the vehicle he was driving without the owner's consent, based upon the circumstances of his flight from the police during both pursuits.

When appellant was apprehended, Officer Larivee examined the key in the ignition of the stolen vehicle and noted it had been shaved or altered. There was testimony by Officer Larivee that generally older model cars such as a 1997 Honda Accord can be started with a shaved key. Officer Larivee also noted there was "minor stripping and that the stereo had been partially removed." Appellant's possession of the stolen vehicle, flight from police, coupled with the shaved key that he used in the ignition of the car (see *People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1577 [evidence of "tools commonly used by

8

vehicle thieves"], constitutes substantial evidence supporting both Counts 3 and 4.

Based on the foregoing, we find there was substantial evidence from which a rational jury could conclude beyond a reasonable doubt that appellant was guilty of unlawfully taking the car and also guilty of unlawful post-theft driving of the same car.  We affirm.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, J.

We concur:

GRIMES, Acting P. J.

WILEY, J.

9